**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

RESIDENTIAL CAPITAL, LLC,

Debtor.

BAYERISCHE LANDESBANK,

Plaintiff,

v.

DEUTSCHE BANK AG, et al.,

Defendants.

**FOR PUBLICATION**

Case No. 12-12020 (MG)

Adv. Proc. No. 12-01884 (MG)

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFF'S MOTION TO REMAND**

*A P P E A R A N C E S :*

BERNSTEIN LITOWITZ BERGER & GROSSMAN LLP
*Counsel for Plaintiff*
1285 Avenue of the Americas
New York, New York 10019
By:    David L. Wales, Esq.
       Lauren A. McMillen, Esq.
       Rebecca E. Boon, Esq.
       Katherine A. Stefanou, Esq.

LATHAM & WATKINS LLP
*Counsel for Defendants*
885 Third Avenue
New York, New York 10022
By:    Richard Owens, Esq.
       Jamie Lynne Wine, Esq.
       Jason Craig Hegt, Esq.

1

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

This case is one of many similar cases originally filed in state court alleging exclusively state law fraud claims arising from the sale of residential mortgage backed securities ("RMBS"). Many similar RMBS cases, some following remand from federal courts, are currently pending in the Commercial Division of the New York Supreme Court in Manhattan. That court is experienced in handling complex civil cases such as this one. Like other similar cases, this case was removed by defendants from state court based on bankruptcy "related to" subject matter jurisdiction under 28 U.S.C. § 1334(b). Such jurisdiction exists because there are pending bankruptcy proceedings for certain mortgage originators (that are *not* defendants in the action) who issued mortgages that collateralize the RMBS. Residential Capital, LLC and 50 of its affiliates ("ResCap" or "Debtors") are Debtors in chapter 11 cases in this Court; that is the hook that was used to remove this case to federal court, even though only four of the fourteen securitization trusts involved in this case include mortgages originated or deposited by ResCap. After the case was removed to the district court on September 7, 2012, it was transferred on that same day to this Court pursuant to the Amended Standing Order of Reference, M-431 (dated January 31, 2012) as related to the ResCap chapter 11 cases.

Removal of similar RMBS state court cases has invariably been followed by motions to remand to state court. With a few exceptions that are easily distinguishable, such motions to remand have been granted based on either mandatory or permissive abstention under 28 U.S.C. §§ 1334(c)(1) or (c)(2).[1]

---

[1]    In *Dexia SA/NV v. Bear, Stearns & Co.*, No. 12 Civ. 4761 (JSR), 2013 WL 636897 (S.D.N.Y. Feb. 21, 2013), the district court denied a remand motion of an RMBS case that included only state law claims that had been removed from New York state court. The district court concluded that it had an independent basis for subject matter jurisdiction upon removal of the action under the Edge Act, 12 U.S.C. § 632, since one of the defendants was a national bank and 18 mortgages included in the securitization trusts (out of nearly 250,000 mortgages included in

2

As explained below, with respect to the pending remand motion, the Court files these proposed findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 9033, recommending that the district court—before which a motion to withdraw the reference remains pending—enter an order remanding the case to state court.

## I.    BACKGROUND

### A.    Procedural Posture

On April 18, 2012, plaintiff Bayerische Landesbank ("Plaintiff" or "BayernLB") filed its New York state court complaint against Deutsche Bank AG ("DBAG"), Deutsche Bank Securities, Inc. ("DBSI"), ACE Securities Corp., Deutsche Alt-A Securities, Inc. and DB Structured Products, Inc. (collectively, "Deutsche Bank" or "Defendants") alleging state law causes of action in connection with RMBS created, issued and sold by Defendants to Plaintiff. On August 16, 2012, Plaintiff filed and served an amended complaint ("Complaint") asserting the same claims.  Defendants removed the action to the district court on September 7, 2012, which referred the case to this Court as related to the ResCap bankruptcy.

On October 5, 2012, Plaintiff filed a motion in this Court to remand the case to state court.[2]  ("Motion," ECF Doc. # 12.)  The Motion is supported by a Memorandum of Law (the "Remand Memo," ECF Doc. # 13) and the Declaration of David L. Wales (the "Wales Decl.," ECF Doc. # 14).  The Defendants filed an opposition to the Motion (the "Opposition," ECF Doc.

---

the trusts) were originated in the Virgin Islands.  There is no argument in this case about Edge Act jurisdiction. Other cases have denied remand motions where the removed state court actions included federal securities law claims rather than state law claims only.  *See, e.g., Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 447 B.R. 302, 308-12 (C.D. Cal. 2010) (finding "related to" jurisdiction and denying motion to remand case that included federal securities law claims); *Mass. Bricklayers & Masons Trust Fund v. Deutsche Alt-A Sec., Inc.*, 399 B.R. 119, 122-23 (E.D.N.Y. 2009) (finding "related to" bankruptcy jurisdiction in RMBS suit and denying motion to remand case that included federal securities law claims).

[2]    On that same day, the Plaintiff also filed a motion to withdraw the reference from the bankruptcy court. (ECF Doc. # 9.)  The motion to withdraw the reference is fully briefed and pending in the district court but remains undecided.  The pendency of the motion to withdraw the reference does not affect the jurisdiction of this Court to act.

# 18), which is supported by the Declaration of Jason C. Hegt (the "Hegt Decl.," ECF Doc. #

19).  Plaintiff filed a reply (the "Reply," ECF Doc. # 24), which is supported by the Reply

Declaration of David L. Wales (the "Wales Reply Decl.," ECF Doc. # 25).  The Court heard

argument on the Motion on February 26, 2013.[3]

Plaintiff argues the Court should remand the case because the Court lacks subject matter

jurisdiction over the action and, even if jurisdiction exists, either mandatory or permissive

abstention is warranted.  While the Court concludes that it has "related to" jurisdiction over the

action, the Court concludes that the case should be remanded to state court because the

permissive abstention factors weigh in favor of remanding this case to state court.[4]

## B.    Plaintiff's Claims Based on the Purchase of RMBS

Plaintiff purchased approximately $585 million of Defendants' RMBS in fourteen issuing

trusts between 2006 and 2007.  These securities were ultimately downgraded to junk status, and

Plaintiff filed a complaint in New York Supreme Court on April 18, 2012 asserting claims for

fraud, fraudulent inducement, aiding and abetting fraud, and negligent misrepresentation under

New York law.  On August 16, 2012, Plaintiff filed and served an amended complaint (the

"Complaint") asserting the same claims.

As alleged in the Complaint, Defendants created, issued, and/or sold RMBS that they

claimed were supported by underlying mortgages that complied with stated underwriting

---

[3]    These same Defendants are also named defendants in another similar RMBS action originally filed in New York state court by the same plaintiffs' attorneys, removed to federal court by defendants based on section 1334(b), and referred to this Court as related to the ResCap chapter 11 cases.  *See Sealink Funding Ltd. v. Deutsche Bank AG (In re Residential Capital, LLC)*, Adv. Pro. No. 12-02051 (Bankr. S.D.N.Y.).  The plaintiff in *Sealink* also filed a motion to remand the case to state court.  The Court is issuing separate Proposed Findings and Conclusions of Law on Plaintiff's Motion to Remand, recommending remand of the *Sealink* action to state court.  A motion to withdraw the reference of the *Sealink* case remains pending before a different district judge than the withdrawal of the reference motion in this case.

[4]    As explained below, the Court declines to decide whether remand should be ordered on the basis of mandatory abstention.

guidelines and were prudent investments.  The Defendants allegedly knew the underlying

mortgages violated these standards and that the RMBS were not prudent investments.  According

to the Complaint, Defendants, as the sponsors and underwriters of the RMBS, had exclusive

access to information about the quality of the underlying mortgage pools, including access to the

loan files and the results of their own due diligence.  In contrast, Plaintiff alleges that it did not

have access to the loan files or due diligence results and reasonably relied on Defendants'

representations regarding the quality of the mortgage pools backing the RMBS.

In the Complaint, Plaintiff asserts claims against the Deutsche Bank entities that

purchased the underlying loan pools, deposited those loan pools into trusts that they controlled,

structured the trusts into RMBS, and sold the RMBS to Plaintiff.  Plaintiff further alleges that

Defendant DBAG controlled the activities of the other defendants, had knowledge of the faulty

practices of the originators whose loans were ultimately included in the securitizations at issue,

and closely oversaw the massive bet against the housing market that was maintained by the

global head of RMBS trading for DBSI.  None of the numerous originators of the underlying

loans, including the ResCap entities that entered into underwriting agreements with the trusts, are

named defendants in this action.

### C.    Relationship to the Residential Capital Bankruptcy Proceeding

On May 14, 2012, various Residential Capital entities (the "ResCap Entities") filed

voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code (the "ResCap

Chapter 11 Proceeding").  On September 7, 2012, Defendants removed this action to the district

court on the basis that seven of the fourteen trusts are "related to" the bankruptcy proceedings of

two groups of non-defendants: the ResCap Entities acted as sponsor, depositor and/or issuer for

four of the fourteen securitization trusts involved in this case (the "ResCap Trusts"); and

American Home Mortgage Holdings, Inc. ("AHM") originated and sold loans to Deutsche Bank

that were securitized in three of the fourteen trusts.[5]  Seven of the trusts include mortgages

originated by entities that are not debtors in any bankruptcy case.

Defendants served as third-party underwriter for the trusts and entered into agreements

with certain ResCap Entities that agreed to indemnify Deutsche Bank Securities for "any and all

losses, claims, damages and liabilities . . . caused by any untrue statement or alleged untrue

statement of material fact" in the various offering documents for the certificates issued by the

ResCap Trusts.  The ResCap Entities also agreed to pay attorneys' fees for such proceedings.

Defendants allege that the ResCap Entities' indemnification obligations arose immediately upon

the filing of this lawsuit.  The Defendants filed timely proofs of claim against seven of the

ResCap Entities in these proceedings.  The Plaintiff has also filed proofs of claim against four of

the ResCap Entities.

### D.     The Motion Before This Court

Plaintiff argues that the Court should remand the case to New York state court for three

reasons.  First, the Court lacks "related to" subject matter jurisdiction under 28 U.S.C. § 1334(b)

because (i) as of the date of the Remand Motion, Defendants had not filed a proof of claim in the

ResCap Chapter 11 Proceeding, meaning there was not yet any indemnification claim and the

outcome could not affect the bankruptcy estate; (ii) this action cannot affect the AHM

bankruptcy proceeding because a plan has already been confirmed; (iii) the proofs of claim were

filed after Defendants' removal notice; (iv) a party cannot be indemnified for its own fraud; and

---

[5]     The AHM bankruptcy proceeding is in Delaware bankruptcy court.  *In re American Home Mortgage Holdings, Inc.,* No. 07-11047 (CSS) (Bankr. D. Del.).  The AHM bankruptcy plan of liquidation has already been confirmed and the effective date has occurred.  January 11, 2008 was the bar date for filing proofs of claim in that case.  Defendants filed three proofs of claim in the AHM bankruptcy, two of which were disallowed and one that was settled by stipulation.  *See* Wales Decl., Ex. D.

(v) Defendants' claims are contingent and unliquidated, and they will have to be either denied or reduced to a liquidated amount before there can be any effect on the bankruptcy estate.

Defendants contend that this Court has "related to" jurisdiction over this action because it is closely related to the ResCap Chapter 11 Proceeding—arguing that more than 40 percent, by value, of the securities at issue in this case were created by, structured by, and collateralized with loans originated by the ResCap Entities. Defendants characterize their role as limited to underwriters for those offerings and emphasize that they are owed indemnification obligations from the ResCap Entities. Therefore, Defendants argue that this action could have a conceivable effect on the *res* of the bankruptcy estate.

Second, Plaintiff argues that even if this Court finds "related to" jurisdiction, mandatory abstention is required pursuant to 28 U.S.C. § 1334(c)(2) because each of the six factors in the applicable test (discussed below) are present in this case. While Defendants concede that four of the six factors are met in this case, they claim that mandatory abstention is not warranted because section 1334 is not the sole basis for jurisdiction over this action (diversity jurisdiction allegedly exists as well), and this action could be more timely adjudicated in federal court.

Last, the Plaintiff argues that even if the Court finds that "related-to" jurisdiction exists and mandatory abstention is not required, permissive abstention is warranted under 28 U.S.C. § 1334(c)(1) for several reasons: (i) none of the Defendants are debtors in the bankruptcy proceeding; (ii) state law issues overwhelmingly predominate; and (iii) nearly all of the Defendants have their primary place of business in New York. Defendants counter that equitable abstention is not warranted because this common law fraud case involves no novel or unsettled areas of state law, this suit is directly related to the ResCap Chapter 11 Proceeding, diversity jurisdiction exists, and a jury trial is available in the district court.

As explained below, the Court concludes that it has "related to" jurisdiction over the action, but the case should nevertheless be remanded to state court based on permissive abstention.

## II.    DISCUSSION

### A.    The Court's Authority to Enter an Order Granting a Motion to Remand

While none of the parties addressed the issue in their briefs or during oral argument, there is an issue whether a bankruptcy judge may enter a final order remanding an action properly before the Court based on "related to" jurisdiction.  Case law is split on this issue.  The claims asserted in the Complaint against Defendants are all non-core state law claims under section 28 U.S.C. § 157(b).  Bankruptcy courts may hear core matters and non-core matters that are "otherwise related" to a case under title 11, but they may only enter a final order or judgment in core proceedings unless the parties consent.[6]  For non-core proceedings, bankruptcy courts may submit proposed findings of fact and conclusions of law to the district court pursuant to the procedure set forth in FED. R. BANKR. P. 9033; the district court then has the authority to enter a final judgment after reviewing *de novo* any matters to which a party timely objects.  28 U.S.C. § 157(c)(1) ("A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.  In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."); FED. R. BANKR. P. 9033(b) ("Within 14 days after being served with a copy of the proposed findings of fact and conclusions of law a party may serve and

---

[6]     *Stern v. Marshall*, 131 S.Ct. 2594 (2011), imposes further limits on a bankruptcy judge's authority to enter a final order or judgment even in certain matters that are statutorily core, but it is unnecessary to explore the issues further here because of the Court's disposition of the Motion.

file with the clerk written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection.").

In considering motions to remand, courts differ on whether the motion to remand itself, as opposed to the underlying lawsuit, constitutes the "proceeding." Some courts have found that a motion to remand is a "core proceeding," regardless of the underlying claims, because a motion to remand a "related to" case could only arise in a bankruptcy case, and matters "arising in" bankruptcy cases are core proceedings. *See generally Meritage Homes Corp. v. JPMorgan Chase Bank, N.A.,* 474 B.R. 526, 536-37 (Bankr. S.D. Ohio 2012) (Hoffman, J.) (recognizing the split in authority and collecting cases). Other courts have found that the "proceeding" referenced in section 157(c) is the underlying lawsuit rather than the motion to remand. *See id.* The Court declines to resolve this issue here.[7] A motion to withdraw the reference was filed on the same day as the motion to remand so there is already a pending motion in the district court that can only be resolved by that court. *See* 28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."). Granting the motion to remand on a final basis would moot the withdrawal of the reference motion. Rather than doing so, the Court will submit proposed findings of fact and conclusions of law to the district court and leave it to the parties, in the first instance, to decide whether to seek *de novo* review of this ruling. If district court review is sought, the district court could then proceed with the remand and withdrawal motions in whatever fashion it concludes is appropriate in the circumstances. The Court reserves for

---

[7]     Whether or not the remand motion in this case is core or non-core, the failure of counsel to raise the issue of the Court's authority to enter a final order in briefs or oral argument could be considered implied consent to the entry of a final order by the bankruptcy judge resolving the Motion. Because there is already a motion pending to withdraw the reference from the bankruptcy court, the Court here elects to simply provide its disposition under Rule 9033 and leave it to the unsuccessful parties to decide whether to object to the determination and seek *de novo* review by the district court.

another day the issue whether, in the absence of a pending motion to withdraw the reference, a

bankruptcy court may enter a final order on a motion to remand a case that is only "related to" a

bankruptcy proceeding.

### B.    "Related to" Jurisdiction

*1.    Before Confirmation, "Related To" Jurisdiction Exists Where the Proceeding
May Have a Conceivable Effect on the Bankruptcy Estate*

Section 1334(b) provides that a district court has jurisdiction over cases under title 11,

proceedings arising under title 11, proceedings arising in a case under title 11, and proceedings

*related to* a case under title 11.  28 U.S.C. § 1334(b).  Section 157(a) permits the district court to

refer all such cases to the bankruptcy court.  28 U.S.C. § 157(a).  Such "related to" jurisdiction is

a broad grant of federal jurisdiction.  *See City of Ann Arbor Emps. Ret. Sys. v. Citigroup Mortg.*

*Loan Trust Inc.*, 572 F. Supp. 2d 314, 317 (E.D.N.Y. 2008) ("The scope of 'related to'

bankruptcy jurisdiction has been broadly interpreted by the Second Circuit."); *Bond St. Assocs.,*

*Ltd. v. Ames Dep't Stores, Inc.,* 174 B.R. 28, 32-33 (S.D.N.Y. 1994) ("The legislative history

makes it clear that section 1334(b), taken as a whole, constitutes an extraordinarily broad grant

of jurisdiction to the Article III District Court.").

In the Second Circuit, before confirmation of a chapter 11 plan, "related to" bankruptcy

jurisdiction exists in any civil action where the outcome "might have any 'conceivable effect' on

[a bankruptcy] estate."[8]  *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 114 (2d Cir. 1992).  To

---

[8]    Post-confirmation, cases in this Circuit and elsewhere apply a more stringent "close nexus" test for "related to" jurisdiction, but have nevertheless upheld "related to" jurisdiction in RMBS cases.  For example, in *Allstate Ins. Co. v. Ace Sec. Corp.,* No. 11 Civ. 1914 (LBS), 2011 WL 3628852, at *4 (S.D.N.Y. Aug. 17, 2011), the district court held in a post-confirmation RMBS case that it retained jurisdiction under the stricter "close nexus" standard, explaining that the defendant's "rights of indemnification arose immediately upon the filing of this lawsuit, covering the costs of litigation regardless of whether Defendants are ultimately found liable.  Therefore, this case already 'affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan[,]' meeting the 'close nexus' test for bankruptcy jurisdiction."  *Id.* (concluding that it had "related to" jurisdiction but remanding case to state court)*; see also Stichting Pensioenfonds ABP*, 447 B.R. at 308-12 (finding "related to"

have a "conceivable effect" on a bankruptcy estate, "certainty, or even likelihood, is not

required." *Winstar Holdings, LLC v. Blackstone Grp. L.P.,* No. 07 Civ. 4634 (GEL), 2007 WL

4323003, at *1 n.1 (S.D.N.Y. Dec. 10, 2007); *In re WorldCom, Inc. Sec. Litig.,* 293 B.R. 308,

322 (S.D.N.Y. 2003).  Rather, an action has a "conceivable effect" if "the outcome could alter

the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and

which in any way impacts upon the handling and administration of the bankrupt estate."

*WorldCom,* 293 B.R. at 317 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995));

*see also In re Wood*, 825 F.2d 90, 94 (5th Cir. 1987) (stating that even where suit "may

ultimately have no effect on the bankruptcy," jurisdiction is established where a court "cannot

conclude, on the facts before [it], that it will have no conceivable effect").

     Jurisdiction has been held to exist where it is premised on a contractual indemnification

obligation by a bankrupt entity.  *See, e.g., In re Wolverine Radio Co.,* 930 F.2d 1132, 1143 (6th

Cir. 1991) (holding that an indemnification provision supported jurisdiction even though the

debtor "would not be affected until and unless [the third party] invoked the indemnification"

provision); *WorldCom*, 293 B.R. at 318-19 (collecting cases); *In re River Center Holdings*, *LLC*,

288 B.R. 59, 63-65 (Bankr. S.D.N.Y. 2003) (finding jurisdiction where the debtor was

contractually obligated to indemnify guarantor who was third party defendant).

     Nonetheless, "the potential applicability of indemnification provisions is not by itself the

equivalent of an effect on an indemnifier's bankruptcy proceedings."  *Allstate Ins. Co. v. Credit

Suisse Secs. (USA)*, No. 11 Civ. 2232 (NRB), 2011 WL 4965150, at *4 (S.D.N.Y. Oct. 19,

2011).  Rather, "[t]he only way defendants' indemnification claims against the Bankrupt

Originators can actually affect the allocation of property among the estates' creditors is if

---

jurisdiction where the debtors were contractually obligated to indemnify the defendants based on the "close nexus"
test).  Since no plan has been proposed or confirmed in this case, the "conceivable effect" standard is applicable.

defendants have asserted their claims against the bankrupt estates." *Id.* (holding the plaintiffs failed to establish "related to" jurisdiction in the RMBS action because they did not file proofs of claim by the bar date in the bankruptcy proceedings of the indemnifying originators); *see also Gen. Electric Cap. Corp. v. Pro-Fac Coop., Inc.,* No. 01 Civ. 10215 (LTS), 2002 WL 1300054, at *2 (S.D.N.Y. June 11, 2002) (stating that the "potential ramifications are insufficient to render the claims that have been asserted against the non-debtor Defendants 'related to' Debtor's bankruptcy proceeding").

Moreover, "[a]n indemnification right arises at the time the indemnification agreement is executed, and it constitutes a claim under the Bankruptcy Code even if the act giving rise to the indemnification has not yet occurred." *Credit Suisse*, 2011 WL 4965150, at *5 (citations omitted). *See also In re Manville Forest Prods. Corp.*, 209 F.3d 125, 128-29 (2d Cir. 2000) (stating that "a right to payment based on a written indemnification contract arises at the time the indemnification agreement is executed," and constitutes "a valid contingent claim" in bankruptcy, even if the act giving rise to indemnification has not yet occurred).

2. *"Related to" Jurisdiction Exists in this Case*

This Court has "related to" jurisdiction over this case. The outcome of the action has a "conceivable effect" on the ResCap Chapter 11 Proceeding because the ResCap Entities may be obligated to indemnify the Defendants if they are found liable in the case. The ResCap Entities may also be obligated to pay a portion of the Defendants' attorneys' fees in the action. The ResCap Entities' indemnification obligations, to the extent they exist, arose immediately upon the filing of this lawsuit and the Defendants filed timely proofs of claim in the bankruptcy case.

Many courts have found "related to" jurisdiction where a debtor and a defendant entered into an indemnification agreement regarding an RMBS offering, and the defendant filed a proof

of claim in the debtor's bankruptcy proceeding before the expiration of the bar date.  *See, e.g.,*

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 386-87 (5th Cir. 2010)

(finding "related to" bankruptcy jurisdiction based on contractual indemnity in RMBS suit);

*Mass. Bricklayers & Masons Trust Fund*, 399 B.R. at 123 (finding "related to" jurisdiction in

RMBS suit based on AHM bankruptcy); *City of Ann Arbor,* 572 F. Supp. 2d at 318 (finding

"related to" bankruptcy jurisdiction in RMBS suit); *see also Fed. Home Loan Bank of San*

*Francisco v. Deutsche Bank Sec*., No. 10 Civ. 3039 (SC), 2010 WL 5394742, at *3 (N.D. Cal.

Dec. 20, 2010) ("A number of courts dealing with litigation concerning mortgage-backed

securities have recently determined that claims for contractual indemnity against an entity in

bankruptcy gives rise to related-to bankruptcy jurisdiction.") (citations omitted).

### C.    Abstention

Not all cases properly removed to federal court based on section 1334(b) jurisdiction

must remain in federal court.  A federal court may abstain from hearing such cases under

sections 1334(c)(1) or (c)(2),[9] and remand the cases to state court under section 1452(b).  *See* 28

U.S.C. § 1452(b) ("The court to which such claim or cause of action is removed may remand

such claim or cause of action on any equitable ground.").  The Court firmly believes that this

case can and should be litigated in the Commercial Division in Manhattan.  That court is already

handling similar cases.  Indeed, Judge Kaplan recently remanded to the Commercial Division

---

[9]      Section 1334(c) provides:

    (1) Except with respect to a case under chapter 15 of title 11, nothing in this
    section prevents a district court in the interest of justice, or in the interest of comity with
    State courts or respect for State law, from abstaining from hearing a particular proceeding
    arising under title 11 or arising in or related to a case under title 11.
    (2) Upon timely motion of a party in a proceeding based upon a State law claim
    or State law cause of action, related to a case under title 11 but not arising under title 11
    or arising in a case under title 11, with respect to which an action could not have been
    commenced in a court of the United States absent jurisdiction under this section, the
    district court shall abstain from hearing such proceeding if an action is commenced, and
    can be timely adjudicated, in a State forum of appropriate jurisdiction.

13

two RMBS cases brought by BayernLB, the same plaintiff, which had also been removed to

federal court on the basis of "related to" jurisdiction.  *See Bayerische Landesbank, N.Y. Branch*

*v. Bear Stearns & Co., et al.,* No. 12 Civ. 2804 ( LAK) (S.D.N.Y. July 16, 2012) (ECF Doc. #

17) and *Bayerische Landesbank, N.Y. Branch v. Merrill Lynch & Co., et al.,* No. 12 Civ. 3856

(LAK) (S.D.N.Y. July 16, 2012) (ECF Doc. # 15) (collectively, the "BayernLB Remanded

Cases").  The BayernLB cases can most efficiently be handled by the same judge in the same

court.  Judge Kaplan's colleagues, Judges Sand, Sullivan and Swain, have likewise remanded

RMBS cases to the Commercial Division.  *See Allstate Ins. Co. v. CitiMortgage, Inc.*, No. 11

Civ. 1914 (RJS), 2012 WL 967582 (S.D.N.Y. Mar. 13, 2012) (Sullivan, J.); *Sealink Funding Ltd.*

*v. Bear Stearns & Co. Inc.*, No. 12 Civ. 1397 (LTS), 2012 WL 4794450 (S.D.N.Y. Oct. 9, 2012)

(Swain, J.); *Allstate Ins. Co. v. Ace Sec. Corp.,* 2011 WL 3628852 (Sand, J).   While the Plaintiff

has presented strong arguments supporting both mandatory and permissive abstention, and while

discussing both arguments below, the Court recommends abstention and remand on the basis of

permissive abstention without fully resolving the issues concerning mandatory abstention.

> ### *1.   The Court Does Not Resolve the Issues Concerning Mandatory Abstention*

Mandatory abstention applies under section 1334(c)(2) only if *each* of the conditions in

that subsection is satisfied.  These conditions are: "(1) the motion was timely brought; (2) the

proceeding in federal court is based upon a state law claim; (3) the proceeding is related to a

bankruptcy proceeding, but does not arise under Title 11 or arise in a Title 11 case; (4) section

1334 is the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6)

the action can be timely adjudicated in state court."  *Allstate Ins. Co. v. Ace Sec. Corp.,* 2011 WL

3628852, at *6.  The issues here are (i) whether the state court action alleging only state law

causes of action could have been commenced in federal court absent "related to" jurisdiction under section 1334(b), and (ii) whether the action could be timely adjudicated in state court.

The first issue turns on whether diversity jurisdiction exists under 28 U.S.C. § 1332. Defendants allege that diversity jurisdiction exists under sections 1332(a)(3) and (a)(4) because the case was brought by a foreign plaintiff (BayernLB is a German corporation). Section 1332(a)(3) provides for subject matter jurisdiction in a suit between citizens of different U.S. states and in which citizens or subjects of a foreign state are additional parties. 28 U.S.C. § 1332(a)(3). Because this provision requires a U.S. citizen on both sides of an action and there is no U.S. citizen as a plaintiff in the case, section 1332(a)(3) does not apply. *See Bank of New York v. Bank of Am.,* 861 F. Supp. 225, 228 n.4 (S.D.N.Y. 1994).

Section 1332(a)(4) provides for subject matter jurisdiction in a suit between a foreign state, as defined in 28 U.S.C. § 1603, and citizens of a state of the United States. A foreign state includes "an agency or instrumentality of a foreign state," which includes "any entity which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof." 28 U.S.C. § 1603(a)-(b). Defendants claim that BayernLB, as a German "Landesbank," or state-owned bank, constitutes a "foreign state" under section 1603.

However, regardless whether BayernLB constitutes a "foreign state," one of the Defendants, DBAG, is also a German corporation. The presence of properly joined foreign entities on both sides of the caption would destroy diversity jurisdiction. *See Flores v. Citizens Intern. Bank*, No. 92 Civ. 1692 (KMW), 1992 WL 309546, at *1 (S.D.N.Y. Oct. 15, 1992) ("Under Second Circuit law, 'the presence of aliens on two sides of a case destroys diversity jurisdiction.'") (quoting *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d

786, 790 (2d Cir. 1980)); *Bank of New York,* 861 F. Supp. at 228 n.4 (stating that "diversity

jurisdiction does not encompass cases between foreigners on one side and foreigners and citizens

on the other"); *L'Europeeane de Banque v. La Republica de Venezuela,* 700 F. Supp. 114, 126

(S.D.N.Y. 1998) ("Section (a)(4) permits the assertion of jurisdiction only against defendants

who are 'citizens of a [U.S.] State or of different [U.S.] States.'").

The Defendants argue that DBAG was "fraudulently joined" as a defendant and,

therefore, should be excluded in determining whether diversity jurisdiction exists.  Defendants

bear the burden of establishing fraudulent joinder, *see Chin v. CH2M Hill Cos., Ltd.,* No. 12 Civ.

4010 (HB), 2012 WL 4473293, at *1 (S.D.N.Y. Sept. 28, 2012) (citing *Briarpatch Ltd., L.P v.

Phoenix Pictures, Inc*., 373 F.3d 296, 302 (2d Cir. 2004)), and it is a particularly heavy burden to

meet.  *See id.; Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459 (2d Cir. 1998).  The burden on a

defendant asserting fraudulent joinder is stricter than the standard for evaluating a Rule 12(b)(6)

motion to dismiss.  *See Chin,* 2012 WL 4473293, at *6.  While the Plaintiff may (or may not)

ultimately be successful in stating a claim against DBAG, the arguments for fraudulent joinder

are "close," even with the lower threshold to overcome a fraudulent joinder argument.  In light of

the strong argument supporting permissive abstention, it is unnecessary to resolve the fraudulent

joinder argument.

The second issue—timely adjudication in state court—is a mixed question of fact and law

involving four factors.  *See Parmalat Capital Finance Ltd. v. Bank of American Corp.*, 639 F.3d

572, 580 (2d Cir. 2011) ("Four factors come into play in evaluating § 1334(c)(2) timeliness: (1)

the backlog of the state court's calendar relative to the federal court's calendar; (2) the

complexity of the issues presented and the respective expertise of each forum; (3) the status of

the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the

state court proceeding would prolong the administration or liquidation of the estate.").  While

Defendants half-heartedly contest whether this action could be timely adjudicated in the

Commercial Division, the factual record regarding timely adjudication is scant and primarily

focused on the number of similar cases already pending in the Commercial Division.  The

Second Circuit remanded *Parmalat* back to the district court after remand was denied to assess

whether that case could have been timely adjudicated in Illinois state court.  *Id.* at 582.  While

this Court's familiarity with the work of the Commercial Division strongly counsels a finding

that the case could be timely adjudicated in state court, Defendants offer mostly argument and no

competent evidence supporting their position.

Therefore, while mandatory abstention may be warranted here, the Court finds it

unnecessary to resolve the Motion on that basis.

### 2.  *This Case Should Be Remanded Based on Permissive or Equitable Abstention*

The Court concludes that this case should be remanded to the Commercial Division based

on permissive abstention.  Courts in this district consider several factors when determining

whether to permissively abstain from a case pursuant to section 1334(c)(1), including: (1) the

effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of

state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4)

comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy

case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed

defendants.  *See Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*, 2012 WL 4794450, at *4;

*Farace v. Pereira,* No. 04 Civ. 1880 (RWS), 2004 WL 1638090, at *6-7 (S.D.N.Y. July 22,

2004).  The movant bears the burden of establishing that permissive abstention is warranted.  *See*

*In re Margulies*, 476 B.R. 393, 402 (Bankr. S.D.N.Y. 2012).

The Court finds that the movant has met its burden of establishing that this case should be remanded on equitable grounds.  Only four of fourteen securitization trusts involved in this case include mortgages originated or deposited by ResCap.  The claims relating to the other ten securitization trusts do not involve ResCap or the administration of the bankruptcy cases.  While both the Plaintiff and the Defendants have filed proofs of claim in the Debtors' chapter 11 cases, which will likely necessitate further proceedings in the bankruptcy case at some point, section 502(c) of the Bankruptcy Code permits the bankruptcy court to use streamlined procedures for resolving disputed claims.  *See* 11 U.S.C. § 502(c)(1) ("There shall be estimated for purpose of allowance under this section—(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case"); 4 COLLIER ON BANKRUPTCY ¶ 502.04 (16th ed. 2012) ("Section 502(c) provides a mechanism for estimating the amount of a contingent or unliquidated claim for purpose of its allowance when the fixing or liquidation of the claim as determined by the court would unduly delay the administration of the case.").  Litigating the removed action to judgment would unquestionably "unduly delay the administration of the [bankruptcy] case."  Such streamlined procedures are not available for adjudicating lawsuits against non-debtor defendants.

The Defendants argue that the Court will necessarily have to address discovery issues if the case is remanded to state court.  It is certainly true that the bankruptcy court will have to deal with discovery issues whether this case proceeds in state court or in the district court if the reference is withdrawn.  The Court is already dealing with discovery seeking documents from the Debtors arising from cases pending in other courts without unduly interfering with the administration of the bankruptcy case.  *See In re Residential Capital, LLC*, 480 B.R. 529 (Bankr. S.D.N.Y. 2012).  But dealing with selective discovery issues is far different from actually

18

managing and litigating to judgment complex cases involving numerous parties and issues completely unrelated to the ResCap Chapter 11 Proceeding. ResCap loans constitute only 7.1% of the loans in all of the trusts at issue, meaning the action is only tangentially related to the ResCap Chapter 11 Proceeding. *See* Wales Reply Decl., Exs. E, F. As a result, most of the discovery in the case will have to be sought outside of the ResCap Chapter 11 Proceeding.

In addition, state law issues clearly predominate. The case involves neither federal law nor bankruptcy law, and New York state courts are currently handling many similar cases, some remanded from federal court. *See* BayernLB Remanded Cases; *Allstate Ins. Co. v. CitiMortgage, Inc.*, 2012 WL 967582, at *7 (remanding a substantially similar case to New York state court and noting that "while this case presents some questions of federal law, it does not require the resolution of any bankruptcy issues"); *Buechner v. Avery*, No. 05 Civ. 2074 (PKC), 2005 WL 3789110, at *5 (S.D.N.Y. Feb. 14, 2005) ("Only state law claims are asserted, all purportedly arising under New York law. This factor weighs in favor of remand."); *see also Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship.*, No. 04 Civ. 708 (GEL), 2004 WL 1048239, at *2 (S.D.N.Y. Mar. 7, 2004) (remanding "perfectly ordinary state-law actions that invoke no aspect of bankruptcy law, that proceed against numerous defendants who are not in bankruptcy and who are jointly and severally liable for all claims and that, even as to the bankrupt defendant, concern actions taken long before the bankruptcy filing"); *Digital Satellite Lenders, LLC v. Ferchill*, No. 03 Civ. 8803 (RWS), 2004 WL 1794502, at *6 (S.D.N.Y. Aug. 10, 2004) (ordering equitable remand where the "action turns entirely on questions of New York law [including common law fraud]").[10]

---

[10]    Federal courts in other districts have also remanded RMBS cases to state courts. *See Prudential Ins. Co. of Am. v. Barclays Bank PLC*, No. 12 Civ. 5854 (WJM) (MF), 2013 WL 221995 (D.N.J. Jan. 22, 2013); *Prudential Ins. Co. of Am. v. J.P. Morgan Securities, LLC*, No. 12 Civ. 03489 (WHW), 2012 WL 6771977 (D.N.J. Dec. 20, 2012).

While this case may not include complex or unsettled areas of law, New York state courts are adept at dealing with such issues and are currently presiding over numerous RMBS cases, including many remanded from the Southern District and two cases that were initiated by the same Plaintiff on substantially similar facts.  *See* BayernLB Remanded Cases; *Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*, 2012 WL 4794450; *Stichting Pensioenfonds ABP v. Ace Sec. Corp.,* Index No. 652460/11 (Sup. Ct. N.Y. Cnty. 2011); Remand Memo at 16 (New York Supreme Court Commercial Division overseeing dozens of similar cases).  In addition, New York Supreme Court's Commercial Division is a specialized division for dealing with complex commercial cases, such as this case, and the action alleges only state law claims.  *See Credit Suisse*, 2011 WL 4965150, at *7 (stating that "because the underlying action alleges only state claims, the Commercial Division may have an edge in the relevant legal expertise"); *Allstate Ins. Co. v. Ace Sec. Corp.,* 2011 WL 3628852, at *10 ("While federal district courts naturally possess expertise in applying federal law, this advantage dissipates for cases alleging exclusively state claims.").

Judge Swain in the Southern District recently remanded a substantially similar case to state court. *Sealink Funding Ltd. v. Bear Stearns & Co. Inc.,* 2012 WL 4794450.[11]  Although the court found that it lacked "related to" jurisdiction because the defendants failed to file timely proofs of claim in the mortgage originators' bankruptcy proceedings, the court explained that it would have permissively abstained from hearing the case even if it had jurisdiction:

> Defendants have not articulated any plausible way in which this action will affect the efficient administration of the administration of the Bankrupt Originators' estates.  Plaintiff's claims exclusively involve state law.  Comity considerations favor remand as well,

---

[11]    As already noted, the Court is recommending remand of another *Sealink* case to state court.  *See supra* n.3. The Court is advised that six RMBS cases filed by plaintiff Sealink are currently pending in the Commercial Division of the Supreme Court in Manhattan.

> because "[i]t is well-settled that comity considerations dictate that
> federal courts should be hesitant to exercise jurisdiction when state
> issues substantially predominate." Remanding to state court
> preserves the parties' right to avail themselves of a jury trial.
> Finally, Defendants have not identified any prejudice that would
> result from this action being remanded to state court.

*Id.* at \*4 (citations omitted).

### III.    <u>CONCLUSION</u>

For the reasons explained above, the Court recommends that this action be remanded to the New York Supreme Court, Commercial Division, from which the case was removed. The Court directs that the Clerk shall serve forthwith copies of these Proposed Findings of Fact and Conclusions of Law on all parties by mail and note the date of mailing on the docket. Within 14 days after being served with a copy, a party may serve and file with the Clerk written objections which identify the specific proposed findings and conclusions objected to and state the grounds for such objections. A party may respond to another party's objections within 14 days after being served with a copy thereof.

Dated:    March 20, 2013
          New York, New York

                         *Martin Glenn*
                    _____
                         MARTIN GLENN
                    United States Bankruptcy Judge